## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LANCE HOGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-04-1045-F |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Lance Hogan seeks judicial review of the final decision by the Defendant Commissioner denying Plaintiff's application for disability insurance benefits. *See* 42 U.S.C. § 405(g). The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record ("AR"). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.   Procedural History

Plaintiff filed an application for disability insurance benefits alleging an inability to work since March 28, 2002, based on back problems and degenerative disc disease, sleep disorder, and Hepatitis C. AR 71-74. Plaintiff's application was denied initially and on reconsideration. AR 59-60. Subsequently, a hearing was held before an Administrative Law

Judge (ALJ), and after consideration of the evidence, the ALJ found that Plaintiff was not

disabled.  AR 15-23.  The Appeals Council denied Plaintiff's request for review.  AR 7-9.

Therefore, the decision of the ALJ is the final decision of the Commissioner.

## II.      The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520

and first determined that Plaintiff had not engaged in substantial gainful activity since the

alleged onset date.  AR 16, 22.  At step two, the ALJ determined that Plaintiff suffers from

severe impairments including degenerative disc disease of the lumbar and cervical spine

areas, status post hernia surgery, a fracture of his 5th metacarpal on his left hand, and fracture

of his right femur.  AR 18, 22.  At step three, the ALJ found no impairment or combination

of impairments that meets or equals the criteria of any listed impairment described in the

regulations.  AR 18, 22.  At step four, the ALJ determined Plaintiff retains the residual

functional capacity (RFC) to lift 30 pounds occasionally and 10 pounds frequently, to stand

and/or walk for 6 hours in an 8-hour workday, to sit for 6 hours in an 8-hour workday, and

to push and/or pull hand and/or foot controls.  The ALJ found that Plaintiff is limited to

occasional stooping.  AR 20.  Based on this RFC, the ALJ determined that Plaintiff can

perform a significant range of light work.  AR 21- 22.  The ALJ further found that Plaintiff

could not perform his past relevant work of heavy equipment operator, lathe tender, grinder

operator, mill hand, and dry wall finisher.  AR 20, 22.  Based on the testimony of the VE,

however, the ALJ determined at step five of the sequential evaluation process that Plaintiff

could perform a significant number of jobs that exist in the national economy and, therefore, that Plaintiff is not disabled.  AR 21-22, 23.

## III.    Plaintiff's Claim Raised on Appeal

Plaintiff does not contest the ALJ's findings in steps one through four of the evaluation process and states that the ALJ adequately determined Plaintiff's impairments and RFC.  Plaintiff challenges only one aspect of the ALJ's decision.  Plaintiff claims the ALJ erred at step five of the sequential evaluation process by relying on the testimony of the vocational expert (VE) regarding jobs Plaintiff would be able to do.  Plaintiff contends that the VE's testimony regarding the exertional and non-exertional requirements for the jobs she identified is inconsistent with the information set forth in the Dictionary of Occupational Titles (DOT).  Plaintiff contends that none of the jobs relied upon by the ALJ satisfies the Commissioner's burden at step five either because Plaintiff lacks the physical ability to do the jobs or because he does not possess sufficient mathematical skills to perform the jobs. Because Plaintiff's claim is limited to an alleged error at step five of the sequential evaluation, analysis of Plaintiff's medical records is not required.

## IV.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The Court will "meticulously examine the record and view it in its entirety" to determine

whether the evidence supporting the Commissioner's decision is substantial in light of any contradictory evidence. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" is evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994); *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

If substantial evidence does not support the Commissioner's decision, or if the Commissioner fails to apply the correct legal standard, the Court must reverse the Commissioner's findings. *Washington v. Shalala*, 37 F.3d 1437, 1439-40 (10th Cir. 1994); *Descheenie v. Bowen*, 850 F.2d 624, 628 (10th Cir. 1988). The Court, however, may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Castellano*, 26 F.3d at 1028.

## V.    <u>Analysis</u>

When an ALJ reaches step five of the sequential analysis, the burden shifts to the Commissioner to show that a claimant has retained sufficient RFC to perform work in the national economy, given the claimant's age, education and work experience. *See Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The ALJ is required to make a number of findings:

> [T]he ALJ must find that the claimant retains a particular exertional capacity, decide whether the claimant has acquired transferable skills, identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies.

*Haddock v. Apfel*, 196 F.3d 1084, 1088-1089 (10th Cir. 1999).  Each of these findings must be supported by substantial evidence.  *Id.* at 1089.  An ALJ need not, however, identify more than one job a claimant can do, so long as that job exists in significant numbers in the regional or national economy.  *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy [for step-five purposes] when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet[.]").  *See also Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (To find a claimant is not disabled, the ALJ must "identify, and establish the claimant's ability to perform, some specific occupation(s) which – however few in themselves – encompass a significant number of available jobs.").

When the testimony of a VE regarding the requirements of a particular job is at odds with the description of the requirements for that job listed in the DOT, the testimony of the VE cannot be considered "substantial evidence."  *See Haddock*, 196 F.3d at 1091.  In *Haddock*, the ALJ found the plaintiff to retain an RFC for sedentary work.  Of the four jobs "summarily identified" by the VE, only one – that of payroll clerk – is described in the DOT as sedentary.  The ALJ compounded the error by failing to ask the VE to specify how many payroll clerk jobs exist.  *Id.*  The Tenth Circuit reversed and remanded the case because the ALJ's step five determinations were not supported by substantial evidence.  The Tenth

Circuit noted that "the agency accepts the [DOT's] definitions as reliable evidence at step four of the 'functional demands and job duties' of a claimants's past job[.]" *Id.* at 1090. For this reason, the Court found that "[i]t would be anomalous to read the agency's regulations to allow an ALJ to disregard the [DOT] at step five – where the ALJ bears the burden – when the ALJ is allowed to rely conclusively on essentially the same information from the [DOT] at step four." *Id.* The court held, therefore, that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091. *See also* SSR 00-4p, 2000 WL 1898704 at *4 (explaining that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [VE] evidence and information provided in the DOT").

Plaintiff contends the ALJ in this case committed legal error at step five of the sequential evaluation process because he failed to ask the VE to explain inconsistencies between the testimony of the VE and information in the DOT. In his hypothetical question to the VE, the ALJ limited the exertional capacity of the hypothetical person to that of Plaintiff. Additionally, the ALJ stated that the hypothetical person would have had a "seventh grade education, plus the machinist training." Finally, the ALJ stated that because of limited education, the hypothetical person would "have a limited ability to read, write, and

use numbers." AR 53.[1]  In response, the VE concluded that such a person would have transferable skills which she failed to identify.  She then identified the following jobs: (1) multi-operation machine operator, which the VE described as a light, skilled occupation with an SVP (specific vocational preparation) of 7; (2) "collatizer [phonetic] operator" which the VE described as semiskilled with an SVP of 4; (3) a toll collector, identified as unskilled work; and (4) touch-up inspector which the VE described as sedentary, unskilled. AR 54.

In his decision, the ALJ relied upon the VE's testimony and found that Plaintiff could perform the jobs of "machine operator (skilled light)," "palletizer operator (semi-skilled light)," "toll collector (unskilled light)," and "touch up inspector (unskilled sedentary)." AR 21.  Plaintiff challenges each of these jobs contending that they either require more strength or better math skills than he possesses.

## 1.    Multi-Operation-Machine Operator

Plaintiff states that the job of "machine operator" identified by the ALJ "does not match the exertional restrictions set forth by the ALJ."  This challenge is based on the assertion that "machine operator" requires a strength level of "medium."  Plaintiff cites the job listing at § 600.380-018 of the DOT.  *See Dictionary of Occupational Titles* (DOT) (4th ed. 1991) Vol. II, § 600.380-018.  The DOT job listing identified by Plaintiff, however,  is actually that of "Machine Set-Up Operator" which does, in fact, require medium strength. This is not, however, the occupation identified by the VE.  The VE testified that Plaintiff

---

[1]Plaintiff does not challenge the validity of the ALJ's hypothetical question or the ALJ's RFC.

could perform the job of "multi-operation machine operator."  Multi-Operation-Machine

Operator is described at § 612.462-010.  *See* DOT Vol. II, § 612.462-010.  This job is listed

as light.  According to the VE, there are 900 such jobs in Oklahoma and 36,000 in the United

States.  AR 54.  There is not a discrepancy between the testimony of the VE and the DOT

regarding the strength requirements for performing the job of Multi-Operation-Machine

Operator, and the fact that the VE testified as to the number of such jobs available both in

Oklahoma and nationally further distinguishes this case from *Haddock*.

In his Reply, however, Petitioner also challenges a non-exertional requirement of this

job.  He notes that a Multi-Operation-Machine operator is required to possess mathematical

ability at the M3 level.  DOT Vol. II, Appendix C, outlines the mathematical development

for M3:

> Compute discount, interest, profit and loss; commission, markup, and selling
> price; ratio and proportion, and percentage.  Calculate surfaces, volumes,
> weights and measures.
> Algebra: Calculate variables and formulas; monomials and polynomials; ratio
> and proportion variables; and square roots and radicals.
> Geometry: Calculate plane and solid figures; circumference, area and volume.
> Understand kinds of angles, and properties of pairs of angles.

Plaintiff's point is well-taken.  Whether a person with "limited ability . . . to use numbers"

would posses the mathematical proficiency to perform the skills listed at M3 is far from clear.

Therefore, the job of Multi-Operation-Machine must be eliminated from consideration in

determining whether substantial evidence supports the ALJ's decision that Plaintiff has

retained sufficient RFC to perform work in the national economy, given his age, education

and work experience.

### 2.   "Collatizer" (Palletizer) Operator

Because of the confusion surrounding the nature of the second job identified by the

VE, it, too, should be eliminated from consideration.[2]  The person who prepared the hearing

transcript phonetically transcribed the VE's words as "collatizer operator."  The ALJ stated

in his decision that the VE testified that Plaintiff could perform the job duties of a "Palletizer

Operator."  AR 21.  The VE described this job as requiring the RFC to perform light work.

The confusion does not end with the identification of the job title.  As Plaintiff points

out, the online internet version of the DOT[3] has several listings for "palletizer operator."  A

"Palletizer Operator II"[4] also listed as a "Packager, Machine," requires a medium exertional

level.  *See* DOT, www.occupationalinfo.org, § 920.685-078.  However, a "Palletizer" listed

at DOT Vol. II, § 929.687.054 is listed as light, as is the job of "Palletizer Operator I" listed

at DOT Vol. II, § 921.682-014.  It is impossible to tell from the record to which, if any, of

---

[2]In her brief, the Commissioner states that this Court "need not address this possible
transcription error between 'collatizer [phonetic] operator' and 'palletizer operator' ' because only
one job is sufficient to support a step five finding.  Commissioner's Brief at 5 n. 2.  As discussed in
further detail, however, the VE failed to reliably identify any jobs Plaintiff could perform.

[3]Online information from the Dictionary of Occupational Titles may be accessed at
www.occupationalinfo.org.

[4]*See* "Palletizer II,  Dictionary of Occupational Titles Index at www.occupationalinfo.org.
This entry links to Code 920.685-078.  The title of this listing is "Packager, Machine (any
industry)," and the alternate title is "machine operator, packaging."

the  types of jobs employing the title of "palletizer" the VE was referring.  Therefore, it is not

possible to conclude that the VE's testimony as to the number of palletizer jobs is valid.

### 3.      Touch-up Inspector

The VE's testimony regarding the job of "touch-up inspector" suffers from the same

deficiencies.   Plaintiff contends that the VE incorrectly testified that the occupation of

Touch-up Inspector is classified as "sedentary" work when in fact the DOT classifies the job

as "light."  A Touch-up Inspector, Printed Circuit Boards is classified as light work.  *See*

DOT Vol. II, § 726.684-062.  A "Film Touch-up Inspector," however, is classified as

sedentary work.  *See* DOT Vol. II, § 726.684-050.  The VE's failure to specify which of

these unrelated jobs she was identifying leaves this Court with uncertainty as to whether the

VE's testimony regarding the number of such jobs is reliable.  Therefore, this job, too, must

be eliminated from consideration.

### 4.      Toll Collector

Although the DOT classifies the exertional demands of the job of toll collector as

light, Plaintiff states that his seventh grade education would preclude him from successfully

performing the mathematical computations required by this position.[5]  In the hypothetical

question posed to the VE, the ALJ asked the VE to consider, among other things, a person

with "limited ability to read, write and use numbers."  AR 53.  The DOT classifies the

---

[5]According to the DOT, the duties of a toll collector include collecting money, giving customers change, balancing cash, and recording money and tickets received. *See* DOT § 211.462-038.

general education development mathematical skill for toll collector as M2. According to the

DOT, the mathematical development for M2 includes the following skills:

> Add, subtract, multiply, and divide all units of measure.  Perform the four
> [basic arithmetic] operations with like common and decimal fractions.
> Compute ratio, rate, and percent.  Draw and interpret bar graphs.  Perform
> arithmetic operations involving all American monetary units.

DOT Vol. II Appendix C (Scale of General Education Development).   It is unclear whether

a  person with "limited ability to work with numbers" could perform the mathematical

computations required by a skill level of M2.[6]  The extent of Plaintiff's math skills is not

adequately developed in the record. "'Although a claimant has the burden of providing

medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly

develop the record as to material issues.'" *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir.

1996) (*quoting Baca v. Department of Health & Human Services*, 5 F.3d 476, 479-80 (10th

Cir.1993) (citations omitted)).  Given Plaintiff's non-exertional limitations as found by the

ALJ, the toll collector job must also be eliminated when considering whether substantial

evidence exists to support the ALJ's decision that Plaintiff retains sufficient RFC to perform

jobs existing in significant numbers in the local or national economies.

---

[6]The Commissioner did not address this issue in her brief before this Court stating only that this Court "need not address the potential conflict with the toll collector job due to the fact that the ALJ found that the Plaintiff had limited ability to use numbers.  Again, the Commissioner need only show that Plaintiff can perform one or more occupations." Commissioner's Brief at 5 n. 2 (emphasis in original).  The above analysis of other jobs identified by the VE shows, however, that contrary to the Commissioner's argument, none of the occupations identified by the ALJ may be accepted as substantial evidence in support of the ALJ's findings.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by August __9th__, 2005.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __20th__ day of July, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE